Carlos A. Zelaya, II (*Pro Hac Vice pending*)
F. Gerald Maples, P.A.
365 Canal Street
Suite 2650
New Orleans, LA 70053
Phone: 504-569-8732
Fax: 504-525-6932

Joseph C. Wilson (SBN # 249027)
5A Funston Avenue
San Francisco, CA 94129
Phone: (415) 420-4009
Fax: (415) 796-0875

Attorneys for Applicants

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re* Application of:<br><br>**Daniel Carlos Lusitand Yaiguaje, et al.**<br><br>**Applicants,**<br><br>**For the Issuance of Subpoenas for the Taking of Depositions and the Production Of Documents in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782.** | Case No. 3:10-mc-80324-CRB<br><br>**APPLICANTS' REPLY MEMORANDUM TO CHEVRON CORPORATION'S "OPPOSITION TO THE LAGO AGRIO PLAINTIFFS' APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782; AND, IF GRANTED, CHEVRON'S REQUEST FOR RECIPROCAL DISCOVERY"** |

# INTRODUCTION

Chevron Corporation ("Chevron") seeks to complicate and confuse a simple request for discovery, and thereby delay or deny the relief the Ecuadorian Plaintiffs request. In opposing the Ecuadorian Plaintiffs' 28 U.S.C. § 1782 discovery application, Chevron presents no cogent argument under the relevant statutory language or jurisprudence in support of its position that this Court should deny the Ecuadorian Plaintiffs' application for a subpoena directed to Diego Borja and Sara Portilla ("the Borjas"). Indeed, Chevron's repeated insistence that the "bribery" scandal that Wayne Hansen and Diego Borja recorded with their spy equipment has important consequences[1] only reinforces the fact that testimony from the Borjas is directly relevant to the underlying litigation in Ecuador.

Instead Chevron requests improper "reciprocal" discovery, and otherwise tries to redirect this court toward scurrilous accusations against the Ecuadorian Plaintiffs, their lawyers, and the entire country of Ecuador, even though that is the very forum where Chevron wanted to litigate this matter, and even though Chevron spent ten years fighting for the right to litigate the underlying litigation there rather than in the United States (which was the Ecuadorian Plaintiffs' original chosen forum).

Chevron's requests for "reciprocity" are overreaching, and Chevron's other arguments are irrelevant to the issue before this court. However, the Ecuadorian Plaintiffs must briefly address

---

[1] *See* Chevron Corp.'s Opp. to the Lago Agrio Pls.' Application for an Order Pursuant to 28 U.S.C. § 1782; and, If Granted, Chevron's Request for Reciprocal Discovery, at 10-13 (Rec. Doc. 20 at pp. 14-17 of 29).

1

APPLICANTS' REPLY MEMORANDUM TO "CHEVRON CORPORATION'S OPPOSITION TO THE LAGO AGRIO PLAINTIFFS' APPLICATION FOR ORDER UNDER 28 U.S.C. § 1782; AND, IF GRANTED, CHEVRON'S REQUEST FOR RECIPROCOL DISCOVERY"
CASE NO. 3:10-MC-80324-CRB

the greatly exaggerated, misleading, and oftentimes untrue conclusory, argumentative and scurrilous accusations Chevron has made in its Opposition.[2]

Chevron opposes the Ecuadorian Plaintiffs' request for the issuance of a subpoena to compel testimony and production of documents from the Borjas ostensibly based on the Plaintiffs' "bad faith" in seeking the requested discovery. Its opposition sets forth an *ad hominem* attack against Steven Donziger, craftily cutting and pasting out-of-context quotations to create a damning portrait of Donziger. While Chevron's aspersions were relevant to Judge Kaplan in deciding whether Donziger should be deposed, and may be relevant still in the Lago Agrio Litigation, those attacks are completely irrelevant to the issue before this Court: whether Plaintiffs' request to depose the Borjas should be granted.

## ARGUMENT

### I. Chevron Presents No Argument Why the Request to Take the Borjas' Depositions, and to Get Relevant Documents from Them, Should be Denied.

Chevron does not deny that the discovery sought is directly relevant to the Lago Agrio litigation or that it meets the requirements for relief under 28 U.S.C. § 1782. In fact, Chevron asks to be allowed to ask questions at the Borjas' depositions. The Ecuadorian Plaintiffs do not object to Chevron being allowed to participate in the depositions, nor do they object to Chevron receiving copies of the document production.[3]

---

[2] Plaintiffs do not admit any of Chevron's allegations and reserve the right to respond to each allegation made in this matter, as well as any other forum necessary, should this Court determined that these allegations are relevant.

[3] The Ecuadorian Plaintiffs are under the impression that Chevron is paying the Borjas' lawyers' fees and otherwise financially supporting them, and that Chevron has a complicated relationship with the Borjas. If this is the case, Chevron may have a conflict of interest here, but the intricacies of that relationship are unknown to the Applicants. To the extent that relationship may restrict Chevron from taking any position adverse to the Borjas or may otherwise affect

*Footnote Continued on Next Page. . .*

2

APPLICANTS' REPLY MEMORANDUM TO "CHEVRON CORPORATION'S OPPOSITION TO THE LAGO AGRIO PLAINTIFFS' APPLICATION FOR ORDER UNDER 28 U.S.C. § 1782; AND, IF GRANTED, CHEVRON'S REQUEST FOR RECIPROCOL DISCOVERY"
CASE NO. 3:10-MC-80324-CRB

Chevron argues that this Court should deny the Ecuadorian Plaintiffs' application because Chevron characterizes the Plaintiffs as "colluding" with the Republic of Ecuador. First, this is an odd accusation for Chevron to make when it is working to an incredible degree with Borja and his attorneys.[4] Second, the Ecuadorian Plaintiffs deny that they have been "colluding" with the Republic of Ecuador. It is a common practice in the United States for two parties involved in related or overlapping litigation to work together, particularly in discovery matters, to improve efficiency and to minimize costs to all parties. Many U.S. Courts even order parties to work together, to make the discovery process more efficient.[5] Furthermore, to the extent that the Ecuadorian Plaintiff have discovered, during the *Lago Agrio* litigation process, evidence that some people may have engaged in criminal activity, there is nothing illegal or improper about bringing this to the attention of the authorities and even insisting that the authorities do something to prosecute the criminal activity.

Regardless, the Ecuadorian Plaintiffs have not been "colluding" or even coordinating their efforts to depose the Borjas with the Republic of Ecuador. While the Republic's interest in the Borjas may overlap with The Ecuadorian Plaintiffs' interests to a certain extent, they may also

---

. . .*Footnote Continued from Previous Page*
Chevron's ability to participate freely and openly in these proceedings, Chevron's and the Borjas' attorneys will need to conduct their own conflict of interest and ethics analyses.

[4] *See In Re The Republic of Ecuador*, Case # 3:10-mc-80225-CRB, Rec. Docs. 40, 41, and 42 (N.D.Ca. 2010). In these pleadings, Borja's attorneys file documents taken from discovery proceedings in which Chevron is a party, but Borja is not. It appears that Borja's attorneys received these documents from Chevron. Also, as discussed in the original Memorandum in Support of this Application at 7-13 (Rec. Doc. 2 at 10-16 of 21), Chevron appears to have had frequent and direct access to the Borjas for over a year, while the Ecuadorian Plaintiffs have not been able to question them at all.

[5] As in, for example, the multi-district oil spill litigation against BP in the U.S. District Court for the Eastern District of Louisiana, in which parties who are even somewhat adverse to one another, such as BP and Transocean, have been ordered to work together and coordinate to facilitate discovery.

3

APPLICANTS' REPLY MEMORANDUM TO "CHEVRON CORPORATION'S OPPOSITION TO THE LAGO AGRIO PLAINTIFFS' APPLICATION FOR ORDER UNDER 28 U.S.C. § 1782; AND, IF GRANTED, CHEVRON'S REQUEST FOR RECIPROCOL DISCOVERY"
CASE NO. 3:10-MC-80324-CRB

diverge in some ways. However, it would be most efficient for everyone involved if the depositions and document production are streamlined so that the Borjas are not subject to multiple uncoordinated requests. To this end, the Ecuadorian Plaintiffs have read the publicly available pleadings in the Republic's application[6] and have attempted to mirror the language that this Court previously ordered in that subpoena, so that the respondents' burden in complying with this request would not be significantly increased, and they would be able to comply quickly. Chevron has presented no cogent argument under 28 U.S.C. § 1782 jurisprudence why this application should be denied or even delayed.

## II. Chevron's Request for "Reciprocity" is Overreaching.

While district courts may fashion "reciprocal" discovery requirements when issuing a 28 U.S.C. § 1782 subpoena, the kind of discovery Chevron requests is simply not contemplated under any 28 U.S.C. § 1782 jurisprudence. Chevron is instead trying to use this proceeding to further the existing imbalance of resources and discovery that Chevron has already created in its favor.

The Supreme Court stated in *Intel Corp. v. Advanced Micro Devices, Inc.*[7] that U.S. District Courts may fashion discovery under 28 U.S.C. § 1782 to maintain parity, or the District Courts may allow the foreign tribunal to act appropriately to safeguard parity between the parties:

> "Concerns about maintaining parity among adversaries in litigation likewise do not provide a sound basis for a cross-the-board foreign-discoverability rule. When information is sought by an "interested person," a district court could condition relief upon that person's reciprocal exchange of information. Moreover, the

---

[6] *In Re The Republic of Ecuador*, Case # 3:10-mc-80225-CRB (N.D.Ca. 2010).
[7] 542 U.S. 241 (2004).

4

foreign tribunal can place conditions on its acceptance of the information to maintain whatever measure of parity it concludes is appropriate."[8]

However, there is no *requirement* that a District Court grant an opposing party any such discovery, much less any support for the argument that a district court should grant the kind of wide-ranging discovery Chevron is requesting. Rather, Chevron's idea of "reciprocal" discovery is not the kind of fair and balanced discovery contemplated by *Application of Malev Hungarian Airlines*:[9]

> "Congress intended, however, that 28 U.S.C. § 1782 would provide an avenue for judicial assistance to foreign or international tribunals whether or not reciprocal arrangements existed. *See, e.g. John Deere,* 754 F.2d at 135; Amram, *The Proposed International Convention on the Service of Documents Abroad,* 51 A.B.A.J. 650, 651 (1965) ("[28 U.S.C. § 1782] is a one-way street. It grants wide assistance to others, but *demands* nothing in return. It was deliberately drawn this way....") (author was Chairman of the Advisory Committee to the United States Commission on International Rules of Judicial Procedure). Therefore, the district court was mistaken to the extent it believed that granting Malev's request would *necessarily* require the district court to supervise discovery sought by Pratt & Whitney from Malev and it should not have predicated its decision on this belief. The district court was free to grant Malev's request without assuming responsibility for supervising Pratt & Whitney's discovery from Malev.[FN4]
>
> FN4. The district court can, of course, accept Malev's offer to engage in "reciprocal discovery" which was first submitted to the district court in an affidavit in support of their petition for discovery and later reiterated in submissions to this court. Malev explained in these submissions that their offer of "reciprocal discovery" means making witnesses and documents available in the United States to the same extent Pratt & Whitney is required to do so."

Chevron has already filed over eighteen § 1782 requests throughout the United States, received over 275,000 pages of document discovery, and taken more than fifteen depositions over

---

[8] *Intel*, 542 U.S. 241, 262 (2004) (citing *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101-02 (2d Cir. 1995); Smit, *Recent Developments in International Litigation*, 35 S. TEX. L. REV. 215, 235-36 (1994)) (internal citations omitted).

[9] 964 F.2d 97, 101-102 (2d Cir. 1992), cited by Chevron in Chevron Corp.'s Opp. to the Lago Agrio Pls.' Application for an Order Pursuant to 28 U.S.C. § 1782; and, If Granted, Chevron's Request for Reciprocal Discovery, at 24 (Rec. Doc. 20 at p. 28 of 29).

5

APPLICANTS' REPLY MEMORANDUM TO "CHEVRON CORPORATION'S OPPOSITION TO THE LAGO AGRIO PLAINTIFFS' APPLICATION FOR ORDER UNDER 28 U.S.C. § 1782; AND, IF GRANTED, CHEVRON'S REQUEST FOR RECIPROCOL DISCOVERY"
CASE NO. 3:10-MC-80324-CRB

approximately the last year.  Furthermore, Chevron has had access to the Borjas for over a year now, and has had the opportunity to get from them whatever discovery it desires,[10] while the Ecuadorian Plaintiffs have had no opportunity to cross-examine them.  This Court should not further the imbalance of resources and discovery between these parties by allowing Chevron to manipulate the § 1782 process this way.

For example, Chevron makes baseless accusations that the Ecuadorian Plaintiffs have colluded with or somehow control Santiago Escobar.  He is a private citizen living in Canada, and the Ecuadorian Plaintiffs have no control over him.  Escobar has made all of his recorded conversations with Borja publicly available, and has given television and radio interviews in Ecuador regarding his relationship with Borja, to which Chevron already has equal access.  If Chevron wants to depose Escobar, Chevron has certainly made it clear that it is capable of expending enormous resources seeking discovery in multiple jurisdictions.  It has the resources to seek the discovery it claims it seeks within Canada in accordance with Canadian law.  Instead Chevron is improperly asking a U.S. District Court to require that the Ecuadorian Plaintiffs secure discovery for Chevron from a private third-party citizen witness who lives in Canada.  Neither this Court nor the Ecuadorian Plaintiffs have jurisdiction or control over Escobar, and this request should be denied.

---

[10] *See* the factual discussion regarding the Borjas' relationship with Chevron and the supporting documentation in the Memorandum in Support of this Application at 7-13 (Rec. Doc. 2 at 10-16 of 21).  Chevron has provided the Borjas with a place to live, ostensibly for "security" reasons.

6

APPLICANTS' REPLY MEMORANDUM TO "CHEVRON CORPORATION'S OPPOSITION TO THE LAGO AGRIO PLAINTIFFS' APPLICATION FOR ORDER UNDER 28 U.S.C. § 1782; AND, IF GRANTED, CHEVRON'S REQUEST FOR RECIPROCOL DISCOVERY"
CASE NO. 3:10-MC-80324-CRB

### III. Chevron's Irrelevant Scurrilous Accusations Should be Disregarded.

First, Chevron paints all Plaintiffs' attorneys with one broad brush, and makes improper and unfounded allegations against the attorneys in this matter. The court should disregard any such broad, unfounded claims.

Second, Chevron has requested that this court wait until Judge Kaplan rules on *other* lawyers' relationships with the Ecuadorian Plaintiffs. But the attorneys representing the Ecuadorian Plaintiffs in this matter are not involved in any matters before Judge Kaplan. Chevron is continuing a pattern of attacking every attorney or expert witness who would dare to lend assistance to the Ecuadorian Plaintiffs, and this court should disregard this broad and irrelevant attack.

Third and finally, Chevron has not presented any admissible evidence supporting its many other scandalous and argumentative accusations. Instead it has craftily cut and pasted out-of-context quotations to attack Steven Donziger. The Ecuadorian Plaintiffs encourage this Court to read the source materials and consider the context from which Chevron pulls these carefully selected quips, many of which Chevron has attached as exhibits.

But this Court should not get bogged down in matters that should be decided by the Lago Agrio Court. Chevron is concurrently flooding the Lago Agrio record in Ecuador with thousands of pages of these same documents from its copious U.S. discovery, on a rolling basis, and Chevron is making these same arguments to the Lago Agrio Court. Because Chevron is presenting all of these same matters to the Ecuadorian Courts, the forum that Chevron selected to decide the underlying environmental litigation, this Court should allow that forum to examine the full record and decide whether or not Chevron is truly an innocent victim here, as it alleges. Because Chevron has presented no pertinent reasons why this application should be denied, the Ecuadorian Plaintiffs request that this Court grant their application without delay.

7

APPLICANTS' REPLY MEMORANDUM TO "CHEVRON CORPORATION'S OPPOSITION TO THE LAGO AGRIO PLAINTIFFS'
APPLICATION FOR ORDER UNDER 28 U.S.C. § 1782; AND, IF GRANTED, CHEVRON'S REQUEST FOR RECIPROCOL DISCOVERY"
CASE NO. 3:10-MC-80324-CRB

## **CONCLUSION**

For the foregoing reasons, the Ecuadorian Plaintiffs respectfully request that this Court grant their Application and permit them to issue the requested subpoenas under 28 U.S.C. § 1782.

Dated: January 24, 2011

Respectfully Submitted
Law Office of Joseph C. Wilson

By: /s/ Joseph C. Wilson
Joseph C. Wilson
Law Office of Joseph C. Wilson
5A Funston Avenue
San Francisco, CA 94129
Phone: (415) 420-4009
Fax: (415) 796-0875

Carlos A. Zelaya, II
(*Pro Hac Vice Pending*)
F. Gerald Maples, P.A.
365 Canal Street, Suite 2650
New Orleans, LA 70053
Phone: 504-569-8732
Fax: 504-525-6932

Attorneys for Applicants

8

APPLICANTS' REPLY MEMORANDUM TO "CHEVRON CORPORATION'S OPPOSITION TO THE LAGO AGRIO PLAINTIFFS' APPLICATION FOR ORDER UNDER 28 U.S.C. § 1782; AND, IF GRANTED, CHEVRON'S REQUEST FOR RECIPROCOL DISCOVERY"
CASE NO. 3:10-MC-80324-CRB