UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE THE REPUBLIC OF ECUADOR,<br><br>    Applicant,<br><br>For the Issuance of a Subpoena for the Taking of a Deposition and the Production of Documents in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782.<br>_____/ | No. C-10-80225 MISC CRB (EMC)<br><br>**ORDER DENYING RESPONDENT'S MOTION FOR RECONSIDERATION, GRANTING IN PART AND DENYING IN PART ECUADOR'S MOTION TO COMPEL, RESPONDENTS' MOTION FOR A PROTECTIVE ORDER, AND CHEVRON'S REQUEST FOR RECIPROCAL DISCOVERY**<br><br>**(Docket Nos. 40, 49, 68, 84)**<br><br>**RELATED CASE** |
| IN RE THE APPLICATION OF:<br><br>Daniel Carlos Lusitand Yaiguaje, *et al.*,<br><br>    Applicants,<br><br>    v.<br><br>For the issuance of Subpoenas for the Taking of Depositions and the Production of Documents in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782.<br>_____/ | No. C-10-80324 MISC CRB (EMC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART APPLICANTS' APPLICATION PURSUANT TO 28 U.S.C. § 1782, RESPONDENTS' MOTION FOR A PROTECTIVE ORDER, AND CHEVRON'S REQUEST FOR RECIPROCAL DISCOVERY**<br><br>**(Docket Nos. 1, 20, 31)** |

   This order memorializes the Court's oral rulings on the above captioned motions at the February 16, 2011 hearing. It is intended to supplement the Court's comments therein.

///

///

## I. INTRODUCTION

Several motions and an application filed pursuant to 28 U.S.C. § 1782 in these related cases are pending before the Court. In *In re the Republic of Ecuador*, the following motions are pending: (1) Respondent Diego Fernando Borja Sanchez's Motion to Reconsider the Court's December 15, 2010 Order on his Motion to Quash, and (2) the Republic of Ecuador's ("ROE" or "Ecuador") Motion to Compel Mr. Borja to Produce Subpoenaed Documents. Also pending is (3) the *Lago Agrio* Plaintiffs' Application for the Issuance of a Subpoena pursuant to 28 U.S.C. § 1782 in *In re Yaiguaje*. Pending in both cases are (4) Respondents' Motions for a Protective Order, and (5) Chevron's Application for Reciprocal Discovery. For the reasons set forth herein, as well as those stated on the record at the February 16, 2011 hearing, the Court **DENIES** Mr. Borja's Motion for Reconsideration, and **GRANTS IN PART** and **DENIES IN PART** Ecuador's Motion to Compel, Respondents' Motions for a Protective Order, Yaiguaje Applicants' § 1782 Application, and Chevron's Application for Reciprocal Discovery.

## II. BACKGROUND

A. The *Lago Agrio* Litigation

In 1993, a group of residents from the Oriente region of Ecuador brought a class action suit against Texaco in the Southern District of New York based on Texaco Petroleum's operations in their region. The complaint, captioned *Aguinda v. Texaco,* sought billions of dollars in damages for the alleged pollution of forests and rivers in Ecuador. In 1995, while the case was pending, Texaco executed a settlement agreement with the Government of the Republic of Ecuador. In 1998, Texaco was declared to have satisfied its obligations and Ecuador purportedly issued a document releasing Texaco from any potential liability. In 2001, the *Aguinda* action was dismissed on *forum non conveniens* grounds. The same year, Texaco merged into Chevron, *i.e.*, Chevron acquired Texaco, with Chevron being the surviving entity.

In 2003, forty-eight Ecuadorians, including some of the *Aguinda* plaintiffs, sued Chevron in Lago Agrio, Ecuador. The forty-eight Ecuadorians ("Plaintiffs" or "Applicants") brought similar claims as those raised in *Aguinda,* along with claims for violation of a 1999 Ecuadorian law. The Ecuadorian court appointed "Settling Experts" to resolve conflicts between the conclusions of the

2

party's experts. Later, allegedly due to political pressure from within the Government of Ecuador, the Court changed course and appointed a single, impartial expert, Richard Stalin Cabrera Vega, to assess damage to affected area.[1] Chevron later obtained video recordings of Cabrera in a long meeting with Plaintiffs' counsel and their consultants, discussing the drafting of Cabrera's report. *See, e.g.,* Ex. P to Bloom Decl. (Resps.' Opp'n) (DVD with subtitled video files). Chevron accordingly claims that Cabrera's report is a fraud. Mr. Borja worked as a consultant for Chevron, appears in (and is allegedly the source of) the videos. According to Applicants herein, he and Sara Portilla also operated a supposedly independent laboratory that took custody of and tampered with soil samples critical to the case.

B. <u>Bilateral Investment Treaty ("BIT") Arbitration</u>

In 2009, Chevron Corporation initiated an arbitration action against Ecuador pursuant to a bilateral investment treaty ("BIT") between Ecuador and the United States. In that arbitration, Chevron asserts that Ecuador abused the justice system in connection with, *inter alia*, the *Lago Agrio* lawsuit. *See In re Chevron Corp.*, No. M-19-111, 2010 U.S. Dist. LEXIS 47034, at *5-6, 10-11 (S.D.N.Y. May 10, 2010); Docket No. 3 (Bloom Decl.) Ex. 3 (NOA ¶ 4) (alleging that the Ecuador's "judicial branch has conducted the Lago Agrio Litigation in total disregard of Ecuadorian law, international standards of fairness, and Chevron's basic due process and natural justice rights, and in apparent coordination with the executive branch and the Lago Agrio plaintiffs"). Chevron seeks a judgment declaring (1) that it has no liability with respect to the alleged pollution, (2) that Ecuador breached its treaty obligations, and (3) its indemnification from Ecuador with respect to the *Lago Agrio* litigation. The Lago Agrio plaintiffs are not a party to that arbitration, but, as this Court has noted, their action in Ecuador is inextricably intertwined with the arbitration. *In re Republic of Ecuador*, 2010 U.S. Dist. LEXIS 132045 (N.D. Cal. Dec. 1, 2010) ("the Lago Agrio litigation presents a 'case within the case,' making its merits relevant to the arbitration.").

---

[1] Chevron alleges that Ecuador, although not a party to the case, has declared its full support for the Lago Agrio plaintiffs and announced that it would receive ninety percent of any recovery. Ecuador disputes the allegation that it would receive ninety percent of any damages obtained in the *Lago Agrio* case. Opp'n to R. 60 Mot. at 5.

3

C.  This Court's Prior Rulings on Ecuador's Application

On September 15, 2010, this Court issued an order granting the Ecuador's *ex parte* application for the issuance of a subpoena (seeking both a deposition and the production of documents) to Mr. Borja. *See* Docket No. 9. Thereafter, the parties stipulated to details regarding service of process, a briefing schedule for a motion to quash, and a deadline for the production of documents. *See* Docket Nos. 12 (stipulation), 13 (stipulation and order). Mr. Borja then filed a motion to quash the subpoena, which the Court grant-in-part and denied-in-part. *See* Docket No. 39 (Order, Dec. 1, 2010). Mr. Borja thereafter filed the pending motion for reconsideration of the Court's Dec. 1, 2010 order. *See* Docket No. 40.

### III.  DISCUSSION

A.  *In re The Republic of Ecuador*

  1.  Diego Borja's Motion for Reconsideration

Rule 60 is an appropriate vehicle for bringing a motion to reconsider a final discovery order. *See, e.g., Xcentric Ventures, LLC v. Arden*, 2010 U.S. Dist. LEXIS 69645 (N.D. Cal. June 23, 2010) (applying Rule 60(b)(4) to an order on a motion to quash). Under Rule 60(b)(2), a court may relieve a party from a final judgment based on newly discovered evidence that could not have been discovered earlier with reasonable diligence. Fed. R. Civ. P. 60(b)(2). Mr. Borja's motion is purportedly based on evidence acquired after December 1, 2010. That evidence is made up of documents indicating that has worked with attorneys for the Lago Agrio plaintiffs. According to Mr. Borja, attorneys for the *Lago Agrio* plaintiffs coordinated with attorneys for Ecuador in order to arrange this subpoena request, and Ecuador plans to turn information it obtains from Mr. Borja over to the Lago Agrio plaintiffs. Mr. Borja also claims the documents support his fear that the discovery will be used in a criminal investigation of him and his wife. R. 60 Mot. at 5. According to Mr. Borja, the evidence "shows a degree of collaboration that goes far beyond the ROE's interest in the BIT arbitration." *Id.* at 7. Mr. Borja therefore argues that since neither Ecuador nor the Procurador have demonstrated that they are "interested persons" in the *Lago Agrio* litigation, which is the real object of the discovery, the Court should find that they have failed to satisfy the requirements of §1782.

4

As Ecuador points out, the Court has already addressed this argument: "As for Mr. Borja's contention that the discovery being sought is more relevant to the *Lago Agrio* litigation, that may be true. However, that is not a reason to bar discovery here so long as the discovery is relevant to the international arbitration between Chevron and the ROE." Order at 12 (Dec. 1, 2010). Ecuador also contends that it was no secret that it has a joint defense agreement with the *Lago Agrio* plaintiffs that specifically covers § 1782 actions. Opp'n at 2 (citing Bloom Decl. ¶ 26 (Docket No. 38)). Even if the new evidence underscores the degree of cooperation between Ecuador and the *Lago Agrio* plaintiffs, it does not gainsay the relevance of the information sought to the BIT arbitration or that fact that Ecuador is an interested party to that arbitration. To the extent Mr. Borja and Chevron argue that this evidence establishes the application is brought in bad faith, evidence of cooperation and the specter that evidence relevant and discoverable in one proceeding might be shared with an interested party in parallel or related proceedings does not constitute bad faith sufficient to deny an otherwise valid application under § 1782. At the very least, Mr. Borja and Chevron fail to cite any persuasive authority to such effect. To the extent Mr. Borja fears the discovery will be turned over to prosecutors in Ecuador and used to harass him, he fails to explain how the evidence obtained herein will increase the risk of prosecution. In any event, the Court orders that the evidence be subject to a protective order as discussed below, which mitigates against this risk. As to Chevron's general allegations of bad faith in the conduct of the underlying litigation, that is not the issue before this Court which merely addresses the § 1782 applications herein. *Cf. In re Veiga*, 2010 U.S. Dist. LEXIS 111468 (D.D.C. Oct. 20, 2010) (["The opposing parties'] resistence, at its core, reduces to a quarrel as to the Applicants' theory of those proceedings and the underlying validity of the claims and defenses asserted therein, supported with little more than alternative interpretations of the evidence relied upon by Applicants. These objections are better left for the foreign tribunals to resolve."). The Court therefore denies Mr. Borja's Motion for Reconsideration.[2]

---

[2] Chevron opposes Ecuador's motion to compel. Although Chevron did not move to intervene, it has standing as a party to the underlying litigation to object to discovery sought from third parties.

2. <u>Motion to Compel</u>

    a. <u>Production and Deposition Pursuant to the December 1, 2010 Order</u>

Ecuador argues that, by withholding documents past the production deadline, Mr. Borja has violated this Court's Orders. *See* Docket Nos. 13 (stipulated order setting production and deposition deadlines, including a document production deadline), 39 (order on Motion to Quash). Mr. Borja does not dispute that allegation, but simply argues that "the Court should grant his Motion to Reconsider and quash the subpoena, thereby mooting any Motion to Compel." Opp'n to Mot. to Compel at 1. In response, Mr. Borja's counsel admits that he "had not anticipated all of the complications involved in responding to the subpoena duces tecum," and promises to continue to prepare to respond the [*sic*] subpoena duces tecum with due diligence, but given the circumstances compliance with the original schedule to which the parties agreed is not practical." Opp'n at 3-4. Since the new evidence presented by Ecuador does not warrant a revision of the Court's prior determinations, the Court grants Ecuador's motion with respect to the production of documents and deposition of Mr. Borja, as described more fully below.

    b. <u>Waiver</u>

Ecuador also requests a ruling that Mr. Borja has waived any privilege he held over responsive documents. Mot. to Compel at 6. Rule 34(b)(2)(A) provides thirty days to respond to a request for production, unless otherwise specified. Fed. R. Civ. P. 34(b)(2)(A). Here, Borja stipulated to a deadline, which, based on the December 1, 2010 order, was December 15, 2010. According to Ecuador, Mr. Borja has yet to produce a single document despite having had four months to prepare.

The Ninth Circuit, has "reject[ed] a *per se* waiver rule that "deems a privilege waived if a privilege log is not produced within Rule 34's 30-day time limit." *Burlington Northern & Sante Fe Ry. v. United States Dist. Court*, 408 F.2d 1142, 1149 (9th Cir. 2005). Yet, "[g]enerally, in the absence of an extension of time or good cause, the failure to object to interrogatories within the time fixed by Rule 33, FRCivP, constitutes a waiver of any objection. This is true even of an objection that the information sought is privileged." *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) (finding waiver of a Fifth Amendment privilege where respondent failed to respond for fifteen

months after interrogatories were propounded). Mr. Borja attempts to distinguish *Davis*, pointing out that the respondent there repeatedly asserted blanket objections to virtually every interrogatory over a fifteen month period. Opp'n at 6. The distinction is meaningful, but so are the similarities – here, as in *Davis*, the respondent has gone months without asserting a privilege. He did not assert any privileges in his motion to quash. Moreover, he did not request relief from a *stipulated* deadline. Merely filing a motion for reconsideration does not stay an impeding deadline. *Maness v. Meyers*, 419 U.S. 449, 458 (1975) (emphasizing the "basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal."); *see also New Pacific Overseas Group (USA) Inc. v. Excal Int'l Development Corp.*, Nos. 99 Civ. 2436 DLC, 99 Civ. 3581, 2000 WL 377513, *7 (S.D.N.Y. Apr. 12, 2000) (Argument that "a party itself may stay an order merely by filing a motion for reconsideration is plainly frivolous. . . . A court's order remains in force until it is vacated or stayed, and a party disregards such an order at its peril." For the reasons stated on the record at the February 16, 2011 hearing, however, the Court will reserve judgment on the question of waiver. Upon production of the privilege log (ordered to be produced along with responsive documents by February 18, 2011), the parties shall meet and confer to reach an agreement in respect thereto. If necessary, they shall file a joint letter describing any unresolved disputes as to privilege. Any such letter shall be filed by February 28, 2011.

### c. Expansion of Deposition Time

Since the Court's order does not specify an amount of deposition time, it was limited to seven hours by default. Fed. R. Civ. P. 30(d)(1). Ecuador seeks an additional seven hours of deposition time with Mr. Borja, in light of the fact that questions and testimony will have to be translated and because there are over two hours of video recordings that counsel would like to go over during the deposition. Mot. to Compel at 7-8. In view of the Court's granting of the Yaiguaje's application to depose Mr. Borja and Chevron's request for the reciprocal right to participate in Mr. Borja's deposition, the Court orders that the deposition will be taken no later than March 21, 2011 and that Ecuador and Yaiguaje be given 2.5 days and Chevron ½ day. The

deposition will occur in the San Francisco Bay Area. Ecuador and Yaiguaje will split Mr. Borja's reasonable travel expenses.

B. Application of the *Lago Agrio* Plaintiffs

1. Statutory Authority to Issue Subpoena

As this Court previously noted, Congress passed § 1782 to facilitate the fair and efficient assistance by district courts in evidence gathering for use in a foreign tribunal. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004); *see also Schmitz v. Bernstein Liebhard & Lifshitz*, LLP, 376 F.3d 79, 84 (2d Cir. 2004) (noting that § 1782 has "twin aims," *i.e.*, "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts") (internal quotation marks omitted).

Under § 1782,

> [t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). A district court *may* grant a § 1782 application where

> (1) the person from whom the discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or internal tribunal or "any interested person."

*In re Chevron Corp.*, 2010 U.S. Dist. LEXIS 47034, at *15.

Applicants contend that "there can be no question" that Respondents are both residents of this district, as they reside in San Ramon, CA. Applicants' Supporting Mem. (Docket No. 2)

8

(henceforth "App.") at 14 (citing Hall Decl. Exs. H (Tr. of October 2009 conversation between Borja and Escobar) and J (letter dated Oct. 26, 2009); *see also* Order (Sept. 15, 2010) (finding that Mr. Borja lives in this district) (Docket No. 9). This point is disputed by Respondents, although they do not allege that the Court lacks jurisdiction. Instead, they ask that, if a subpoena issues, Applicants cover their deposition expenses. Consistent with the agreement on the record at the February 16, 2011 hearing as a result of the offer by both Applicants to split the cost of reasonable travel expenses, this is no longer a point of dispute.

There is no dispute that the *Lago Agrio* proceeding is a proceeding before a foreign tribunal within the scope of § 1782 and that the applicants are "interested persons" within the meaning of that statute. *See Intel*, 542 U.S. at 256 (stating that an interested person under § 1782 "plainly reaches beyond the universe of persons designated 'litigant,'" although there is "[n]o doubt [that] litigants are included among, and may be the most common example"). But last week, the Ecuadorian court in the *Lago Agrio* litigation issued a final judgment against Chevron. At the February 16, 2011 hearing, it was undisputed that the time for an appeal had not expired, and that an appeal would be filed shortly. Thus, there remains a pending proceeding before a foreign tribunal. Further, the Court finds that Applicants have made a *prima facie* demonstration that the requested discovery is "for use in a proceeding before a foreign tribunal" by virtue of their undisputed representation that there is a method of submitting evidence for consideration by the appellate tribunal in Ecuador even after a trial court judgment is rendered. The Court accordingly finds that Applicants satisfy each statutory prerequisite under § 1782.

2. Discretionary Factors

Having concluded that it has authority to issue the subpoena, the Court now turns to the discretionary questions of whether it should exercise that authority and how. The Court's analysis is guided by the "*Intel* factors" articulated by the Supreme Court:

> (1) whether the material sought is within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid;
> (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court jurisdictional assistance;
> (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a

9

foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests.

*Chevron*, 2010 U.S. Dist. LEXIS 47034, at *16; *see also Intel*, 542 U.S. at 264-65.

### a. Jurisdictional Reach of Foreign Tribunal

The Supreme Court has noted that,

> when the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

*Id.* at 264. Neither Respondent here is a party in the *Lago Agrio* case. They now reside in the United States. This factor therefore weighs in Applicants' favor. *See In re Chevron Corp.*, 2010 U.S. Dist. LEXIS 47034, at *20 (noting that Ecuadorian court and international arbitral tribunal lacked jurisdiction to compel the individual, who was located in the district and not a party to the foreign proceedings, to produce the material sought).

### b. Nature and Receptivitiy of Foreign Tribunal

#### i. Judicial Estoppel

As a preliminary matter, Respondents argue that, since Applicants previously argued that the Ecuadorian court should declare it is not receptive to evidence surfacing from § 1782 proceedings, they "should in fairness be estopped from invoking that very statute . . . ." Resps.' Opp'n at 8. As Applicants point out, Respondents cite no authority for this proposition. Citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001), Applicants argue that applying judicial estoppel as Respondents request would be unfair and inconsistent with the doctrine's purpose. Reply at 2. Under the doctrine, courts consider whether (1) the supposedly contradictory positions are "clearly inconsistent," (2) the party succeeded in persuading the lower court of its earlier position, and (3) the party would derive an unfair advantage from the inconsistent position. *Id*. at 750. Applicants are not the party who succeeded in persuading the Ecuadorian court on this point; it was Chevron who succeeded. Chevron has made numerous successful applications. Moreover, Respondents do not

explain how Applicants would gain an unfair advantage as a result of the consistent treatment of the parties' respective § 1782 applications. The Court therefore rejects Respondents' judicial estoppel argument.

### ii. Receptivity

The pending application states that the need for discovery is "urgent" because the Ecuadorian court had already issued an "*autos para sentencia*" order closing the evidentiary period and "judgment is expected as early as February 2011." App. at 4. As mentioned above, the court in Ecuador has indeed issued its judgment. Since Applicants assert that there is a lawful process by which evidence may be submitted to the appellate tribunal, the Court finds that this factor weighs in Applicants' favor. Absent evidence that the tribunal will reject the evidence sought, the Court is not inclined to consider whether the foreign tribunal ultimately is likely to accept it. *See* Order, No. 10-80225 (Sept. 15, 2010) at 6 (noting that even opposition by the foreign court "would not necessarily carry the day" and citing *In re Chevron Corp.*, 2010 U.S. Dist. LEXIS 47034, at *21 & n.51 (pointing out that, in *Intel*, the European Commission stated that it did not need or want U.S. federal court assistance)); *In re Veiga*, No. 10-370, 2010 LEXIS 111468 (D.D.C. Oct. 20, 2010).

### c. Attempt to Circumvent Foreign Proof-Gathering Restrictions and Policies

Although Respondents and Chevron allege malfeasance by Applicants' counsel, none of their allegations suggest that the § 1782 application is an attempt to circumvent foreign proof-gathering restrictions. Indeed, it does not appear that the Ecuadorian court could compel discovery here since Respondents are not parties to the case and they now live in the United States. Accordingly, this factor weighs in Applicants' favor.

### d. Undue Intrusion or Burden

Applicants, like Ecuador, want Mr. Borja to provide testimony and produce documents related to his alleged involvement in a scheme to bribe the Judge Nuñez, who formerly presided over the *Lago Agrio* case. Applicants also claim that Chevron used expert reports in the case that relied on soil samples that were in Respondents' custody. App. at 3. Although Applicants are willing to stipulate to the same restrictions on scope imposed on the *In re Ecuador* subpoena, they describe that subpoena as "seeking different but overlapping evidence." *Id.* at 17. The Court has previously

11

ruled on the subject matter of the requests contained in Ecuador's application which the Court tailored to issues raised in the BIT arbitration. To the extent the subpoenas in the BIT arbitration and the *Lago Agrio* litigation are coextensive, the burden on Respondents in producing documents sought by Yaiguaje Applicants should be minimal, particularly in light of his existing obligation to provide documents and testimony in response to the *In re Ecuador* subpoena. This does not hold true for Sara Portilla, however, since she is not scheduled for a deposition and the Applicants provide scarcely any evidence indicating that she is likely to have relevant, non-cumulative information regarding the bribery scheme. The Court therefore denies Applicant's request to depose Ms. Portilla at this time, without prejudice to a further showing should the deposition of Mr. Borja produce evidence of more substantial involvement.

The additional information Applicants request, certain documents concerning soil samples or payments from Chevron, are clearly relevant and will not cause much additional burden, but others appear broad. The Court has asked the parties to meet and confer with respect to those additional requests. With those caveats, the Court finds that the proposed subpoena imposes no undue intrusion or burden on Respondents. Therefore, this factor also weighs in favor of granting the application.

The parties are to meet and confer and come to an agreement on the scope of documents subpoenaed from Mr. Borja. They shall report by filing a joint letter to the Court by February 24, 2011. Any privilege log and responsive documents shall be provided by March 2, 2011. Any dispute as to privilege shall be submitted to the Court by joint letter.

e. <u>Bad Faith</u>

Although it is not one of the enumerated *Intel* factors, bad faith is a principal ground upon which Respondents and Chevron object. They essentially argue that the *Lago Agrio* litigation is a sham perpetuated by Applicants' attorneys, such that the Court would be countenancing misconduct by granting the application. Specifically, they claim that Applicants' attorneys improperly collaborated with the Republic of Ecuador by planning to (1) use Ecuador's subpoena to obtain materials they can use in the *Lago Agrio* case, and (2) threaten Chevron's attorneys with criminal

prosecution.³ Chevron's Opp'n at 16-18. The Court accepts this as an appropriate discretionary consideration, whether or not it is articulated as an *Intel* factor. *See Metallgesellschaft v. Hodapp* (*In re An Order Permitting Metallgesellschaft Ag to Take Discovery*), 121 F.3d 77, 79 (2d Cir. 1997) (noting that if a court "'suspects that the [§ 1782 discovery] request is a 'fishing expedition' or a vehicle for harassment, the district court should deny the request'") (quoting *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1988)); *see also In re Sveaas' Application*, 249 F.R.D. 96, 106 (S.D.N.Y. 2008).

### i. Collaboration Among Applicants' Attorneys

Applicants and Ecuador do not dispute that they have a joint agreement covering § 1782 applications. *See* Bloom Decl. ¶ 26 (Docket No. 38). Nowhere in their hefty filings do Respondents or Chevron point to an applicable rule, order, or representation inconsistent with the information sharing they describe. Nor do they explain why such an arrangement would eviscerate an otherwise legitimate interest in the discovery sought here. The cases cited by Chevron and Respondents do not state that such sharing of evidence constitutes bad faith sufficient to deny an otherwise valid application under § 1782 seeking relevant evidence. The argument that attorneys for the *Lago Agrio* plaintiffs as well as the attorneys for the applicants in the cases *sub judice* have improperly collaborated in bad faith does not negate an interested party's right to legally relevant evidence otherwise discoverable.

### ii. Threat of Intrusion Upon Liberty and Security

Respondents claim that they fear for their safety and liberty due to a threat of prosecution. Pointing to *United States v. Sealed 1, Letter of Request*, 235 F.3d 1200, 1205 (9th Cir. 2000), they ask that the Court deny the application. Resps.' Opp'n at 7. In *Sealed 1*, a Ninth Circuit panel reviewed a district court's denial of a motion to dismiss a §1782 request from Russia that sought

---

³ Chevron also claims that Applicants' counsel have not been properly retained. Chevron's Opp'n at 21-22. Chevron alleges that attorneys appearing on behalf of Applicants here "appear to be in the same position" as the *Lago Agrio* plaintiffs' attorneys in a separate matter who are subject to an order to show cause as to why they "should not be sanctioned for purporting to represent the [Lago Agrio] plaintiffs when they are not authorized to do so." *Id.* (quoting *In re Chevron*, No. 10-mc-0002 (S.D.N.Y. Jan. 7, 2010) (order)). In response, Applicants' attorneys deny the allegation and state they are not involved in the other matter. Chevron does not provide support for its speculative contention in the matters at bar, and the Court rejects it.

information in connection with a tax fraud investigation. *Id.* at 1203. The respondent argued that § 1782 does not permit such assistance unless a foreign proceeding is imminent. *Id.* The panel disagreed, but noted that the district court "may take into account the nature and attitudes of the government of the country from which the request emanates and the character of the proceedings in that country." *Id.* at 1205 (quoting S. Rep. No. 88-1580, 88th Cong., 2d Sess. (1963), reprinted in 1964 U.S.C.C.A.N. 3782, 3788). The court also quoted with approval an article suggesting that "[a] refusal to grant assistance under Section 1782 may also be based on the district court's finding that, in some way, the foreign proceedings are unfair or incompatible with domestic notions of propriety. But caution in that regard is warranted, because American courts should not condemn foreign proceedings merely because they are different from those conducted in, or unknown to, American Courts." *Id.* at 1206 (quoting Hans Smit, American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited, 25 Syracuse J. Int'l L. & Com. 1 (1998)).

Here, there may be some reason to question the legitimacy of the foreign proceedings, based on numerous allegations of fraud, undue influence, and impropriety of the former judge. Indeed, Respondents contend that they left Ecuador for safety reasons. If, as Chevron and Respondents allege, Applicants' attorneys have influence over the Fiscalia (Ecuador's Prosecutor General), they may be able to use threats of prosecution to coerce a settlement, as Respondents allegedly fear. *See generally In re Chevron*, No. 10-0002, 2010 WL 4910248, *2, 17 (S.D.N.Y. Nov. 10, 2010) (describing politically motivated threat of prosecution in Ecuador). But as noted above they fail to explain how the discovery sought would heighten that threat to Respondents. After considering the parties' arguments and submitted materials, the Court concludes that the allegations and evidence of bad faith here remain speculative and are an insufficient basis to deny the application outright. The Court will, however, strive to minimize the threat of illicit prosecution via a protective order, as discussed below.

C.   Chevron's Application for Reciprocal Discovery

Chevron submitted an "Application for an Order Conditioning Any Grant of the Lago Agrio Plaintiffs' Application . . . Upon Reciprocal Discovery" along with its opposition brief in each case.

*See* Docket No. 68-7 (*Ecuador*); Docket No. 20-7 (*Yaiguaje*).  Chevron requests equal deposition time with Respondents.  In addition, Chevron requests a wide range of reciprocal discovery from Applicants themselves.  Most of the information sought appears to be far afield from the material Applicants seek from Respondents.

Chevron cites *In re Malev Hungarian Airlines*, 964 F.2d 97, 101-02 (2d Cir. 1992) in support of its request.  In that case, the Second Circuit noted that a district court may accept the Applicant's *offer* to engage in "reciprocal discovery," which "means making witnesses and documents available in the United States to the same extent [Respondent] is required to do so."  *Id.* at 102 n.4.  For their part, Applicants argue that Chevron's request goes far beyond their own, and point out that Chevron has already received extensive discovery via § 1782 in other proceedings, such that parity is not a genuine issue.  The Court sees no reason to grant Chevron's broad request as a matter of parity.[4]

Moreover, the wide ranging discovery sought against the Applicants would appear to fail the crucible of § 1782, the normal basis for this Court's exercise of jurisdiction in aid of a foreign proceeding.  It is not clear that prospective deponents or documents Chevron now seeks are found in this district.  Even if they are, it is not clear that the material sought is not already within the jurisdictional reach of the foreign tribunal.  There also appears to be a risk that such discovery against parties to a foreign proceeding could circumvent foreign proof-gathering restrictions.  As to reciprocal discovery aimed at Ecuador, there may also be sovereign immunity issues.  *See generally Fayed v. CIA*, 229 F.3d 272 (D.C. Cir. 2000) (discussing whether a sovereign nation can be a "person [who] resides or is found" in the district such that it may be subject to discovery under § 1782.)  The Court rejects Chevron's attempt to shoehorn wide ranging discovery against parties to a foreign proceeding under the guise of "reciprocal discovery" because it would circumvent to statutory scheme under § 1782 established by Congress.  Chevron addresses none of these concerns in its papers.

---

[4] The Court further notes that with respect to Ecuador's application, Chevron's request for reciprocal discovery is untimely.  Chevron chose not to appear when Ecuador first sought to subpoena under § 1782, did not join Mr. Borja's motion to quash or motion for reconsideration; Chevron filed its brief opposing discovery of Respondents and seeking reciprocal discovery only *after* Ecuador filed its brief in opposition to Mr. Borja's motion for reconsideration.

15

However, the Court will permit Chevron to participate in the deposition of Mr. Borja, as detailed below. The Court denies any further reciprocal discovery. If Chevron seeks discovery from Applicants within this district, it may file § 1782 applications provided Chevron can meet the statutory prerequisites and the discretionary factors under *Intel*.

D.  Respondents' Motions for a Protective Order

On February 2, 2011, Respondents filed a two-page motion for a protective order, along with a proposed order in each related case. Each proposed order would restrict information obtained pursuant to a subpoena to the case it arises from, based on the applicant. For example, the proposed order for *In re Ecuador* would, *inter alia*, prohibit Equador from disclosing materials or deposition testimony to anyone outside of the BIT arbitration, including Ecuador's Prosecutor General, and requires that all protected materials to be returned to Mr. Borja's counsel or destroyed within ninety days of a final judgment in the BIT matter. *See* Docket No. 84-1.

Under Rule 26 the Court may issue a protective order where "justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); see also Rule 26(c)(7) (courts have discretion to impose a protective order to prevent disclosure of confidential commercial information). As Ecuador points out, Mr. Borja's motion is a bare-bones request that does not show cause for a protective order. That is not to say that a protective order is inappropriate here, however. *Cf. In re Application of Euromepa, S.A.*, 51 F.3d 1095, 1101 (2d Cir. 1995) ("[I]t is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order than by simply denying relief outright."). In light of the allegations concerning criminal investigations and prosecutions in Ecuador, the Court has asked the parties to meet and confer to prepare an appropriate protective order that will adequately safeguard Respondents from an illicit prosecution based on the documents or testimony they provide pursuant to the subpoena.

///

///

///

E. Discovery

The Yaiguaje applicants may take Mr. Borja's deposition as noted above, and may obtain documents responsive to the request as modified by the parties per stipulation or Court order. The request to take Ms. Portilla's deposition is denied without prejudice.

## IV. CONCLUSION

For the foregoing reasons, as well as those stated on the record at the February 16, 2011 hearing, the Court hereby **DENIES** Mr. Borja's Motion for Reconsideration, **GRANTS IN PART** Ecuador's Motion to Compel, **GRANTS IN PART** Respondents' Motions for a Protective Order, **GRANTS IN PART** the pending § 1782 Application, and **GRANTS IN PART** and **DENIES IN PART** Chevron's Motion for Reciprocal Discovery. The Court reserves judgment on Ecuador's Motion to Compel with respect to waiver of privileges. As stated on the record at the February 16, 2011 hearing, the Court hereby **ORDERS** as follows:

1. Mr. Borja shall turn over responsive documents and a privilege log to Ecuador no later than Friday, February 18, 2011. If there are unresolved disputes (after the parties meet and confer), the parties shall file a joint letter describing those disputes by February 28, 2011.

2. The *In re Yaiguaje* Applicants may serve the subpoena on Respondents.

3. Counsel for Respondents shall meet and confer with counsel for the *In re Yaiguaje* Applicants regarding document requests. Any dispute will be brought to the Court's attention by joint letter filed by February 24, 2011. Respondents shall turn over responsive documents and a privilege log by March 2, 2011. Any disputes as to privilege (after the parties meet and confer) shall be reported in a joint letter to the Court by March 4, 2011. The Court will not entertain a motion to quash.

4. The parties shall meet and confer to produce a proposed protective order for the Court's signature immediately.

5. The deposition of Diego Fernando Borja Sanchez, with respect to both subpoenas, shall be completed no later than March 21, 2010. Chevron may participate in the

17

deposition.  The deposition period shall be three days, with Chevron to have ½ day and the remaining time shall be split among the Applicants.

This Order disposes of Docket Nos. 40, 49, 68 and 84 in Case No. 10-80225 and Docket Nos. 1, 20, and 31 in Case No. 10-80324.

IT IS SO ORDERED.

Dated: February 22, 2011

_____
EDWARD M. CHEN
United States Magistrate Judge